### DALY v. UNITED STATES.
### No. 4736.

United States Court of Appeals
First Circuit.

Jan. 7, 1954.

Stephen C. Struffolino, Lawrence, Mass. (Michael Carchia, Boston, Mass., with him on brief), for appellant.

Charles F. Choate, Asst. U. S. Atty., Boston, Mass. (Anthony Julian, U. S. Atty., and Edward D. Hassan, Asst. U. S. Atty., Boston, Mass., with him on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This is an appeal by John W. Daly from a judgment imposing upon him a sentence of imprisonment for one year upon conviction of the offense of criminal contempt. The case is one of several, arising out of a federal grand jury investigation of the Brink's robbery in Boston on January 17, 1950, which we heard together, because the various appeals had a common background and involved certain related issues.[1] See Carlson v. United States, No. 4732, 1

1. The other opinions in this group of cases are in Carlson v. United States, No. 4732, 1 Cir., 209 F.2d 209; Hooley v. United States, 1 Cir., 209 F.2d 219; O'Keefe v. United States, 1 Cir., 209 F.2d 223; Maffie v. United States, No. 4735, 1 Cir., 209 F.2d 225; and Hooley v. United States, 1 Cir., 209 F.2d 234.

Cir., 209 F.2d 209, for our main opinion in this group of cases.

On December 17, 1952, Daly appeared under summons as a witness before the Brink's grand jury. After declining to sign a "waiver of immunity", he was subjected to examination by an Assistant United States Attorney. Forty-six of the questions he declined to answer on the ground of his privilege against self-incrimination. The questioning got nowhere.

Among the questions which he thus declined to answer were inquiries as to his occupation after he left employment in the Department of Public Works in 1949; whether he knew Adolph Maffie; whether he knew "Specs" O'Keefe and Stanley Gusciora, and numerous other persons; whether he had ever been to or telephoned to Pennsylvania; whether he had ever been in company with Anthony Rocco and Adolph Maffie at Jimmy O'Keefe's Bar and Grille, or at a Chinese restaurant in the South End of Boston; whom did he "chum around with"; how much money he earns per week; whether his "business troubles" affected his memory; whether he had ever arranged with Rocco to take a cashier's check for $3,000 to Pennsylvania for the benefit of "Specs" O'Keefe; whether he had ever given $2,500 to Rocco for his expenses and services in coming to Boston from Pennsylvania in relation to arranging bail for "Specs" O'Keefe; when was the last time he saw either "Specs" O'Keefe or Stanley Gusciora; whether he owned the South Huntington Cafe, or was president and director of the South Huntington Cafe, Inc.; whether there was such a cafe; whether he was associated in business whereby he and his associates obtained a liquor license from the City of Boston; whether he had been interviewed by special agents of the Federal Bureau of Investigation.

Immediately after his abortive appearance before the grand jury, a "presentment" was filed by that body reciting that "John Warren Daly appeared before the Grand Jury, and did wilfully, deliberately and contumaciously, by evasion and irresponsive answers, obstruct the process of this Court, and did obstruct justice in failing and refusing to answer proper questions in the Grand Jury proceedings".

The district court gave notice of a hearing on this presentment. At that hearing the government introduced in evidence the transcript of Daly's examination before the grand jury, and rested. Counsel for Daly rested without introducing any evidence. The district court ordered Daly to return to the grand jury to answer all questions except those dealing with "Specs" O'Keefe, or any member of the O'Keefe family, or Stanley Gusciora. Counsel for Daly, after consultation with his client, announced in open court that Daly, "availing himself of his constitutional rights, refuses to go back to the Grand Jury." Thereupon the court adjudged Daly to be in criminal contempt of its authority, on account of his refusal to obey this order of court. Appeal was duly taken from this judgment of conviction.

As in the companion case of Maffie v. United States, No. 4735, 1 Cir., 209 F.2d 225, Daly moved that this court receive in evidence and consider a number of Boston newspaper stories on the issue whether Daly had reasonable cause to apprehend danger of self-incrimination from direct answers to the questions the district court ordered him to answer. The newspaper clippings, which were never offered in evidence before the district court, describe the FBI and grand jury investigations of the Brink's case and indicate that many associates of "Specs" O'Keefe were suspected of complicity in the robbery. One of the clippings stated that Daly worked for Adolph Maffie, a big time racketeer and gang leader; that Daly is reputed to be a bookie and racketeer, and an associate of "Specs" O'Keefe, and is understood to possess knowledge of what had become of the Brink's loot. For the reasons stated in our opinion in Maffie v. United States, supra, we deny the motion to supplement the record on appeal.

Notwithstanding the paucity of this particular record, we are of opinion—taking into account the background material of which the district court was aware from its familiarity with the related cases, considering also the attempt of the government to obtain from Daly a "waiver of immunity" before his examination commenced, and considering the character and subject matter of the questions addressed to him—that he was in about the same predicament as Maffie at his appearance before the grand jury and had the same justified ground of apprehension that the interrogator was about to examine him as a suspect, in the hope of getting out of him disclosures tending to implicate him in some way with the Brink's crime. We make the same disposition of this case as we do in Maffie v. United States, for the reasons indicated in our opinion in that case, being definitely of the impression that it would be unjust to make a distinction between the two cases.

The judgment of the District Court is vacated, and the case is remanded to that Court with direction to dismiss the proceeding against John W. Daly on the grand jury's presentment.