24CA1157 Marriage of Becker 11-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1157
Douglas County District Court No. 19DR30231
Honorable Robert Lung, Judge

---

In re the Marriage of

Chrissy Sue Becker,

Appellee,

and

Donald Scott Becker,

Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE DUNN
Lipinsky and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

---

Schaffner Law, LLC, Joseph Maher, Greenwood Village, Colorado, for Appellee

Donald Scott Becker, Pro Se

¶ 1    Donald Scott Becker (father) appeals the district court's adoption of the magistrate's order dismissing his motion to modify maintenance and child support.  We affirm.

## I.    Background

¶ 2    The district court dissolved father's marriage with Chrissy Sue Becker (mother) in 2020.  In its permanent orders, the court ordered father to pay maintenance and child support to mother.  In January 2021, father moved to modify maintenance and child support, claiming a loss of employment.[1]  One week later, mother filed a motion seeking remedial and punitive contempt sanctions for father's failure to pay maintenance and child support.  Over father's objection, the court set the motions for a consolidated hearing in July 2023.

¶ 3    Approximately four months before the hearing, mother moved to compel father to cooperate with setting a deposition, alleging that father's failure to disclose "even his basic income data . . . which [was] essential information needed to assess [his] modification requests" made the deposition necessary.  The magistrate granted

---

[1] Father later moved to amend his motion based on the emancipation of the parties' eldest child.

mother's motion and ordered father to "cooperate" with the deposition.

¶ 4     At the deposition, after a few basic procedural questions, mother's counsel and father had the following exchange:

> [Mother's Counsel:] This is Exhibit 1. Exhibit 1 is the motion to modify maintenance and child support that you filed in our case, right?
>
> [Father:] I choose to exercise my Fifth Amendment rights.
>
> [Mother's Counsel:] So you won't even answer that this motion was filed by you in this case?
>
> [Father:] I choose to exercise my Fifth Amendment rights.
>
> [Mother's Counsel:] Is there anything that I ask you that you're actually going to give an answer, or are you just going to exercise your Fifth Amendment rights this entire time?
>
> [Father:] I'm going to exercise my Fifth Amendment rights this entire time.

Mother's counsel then ended the deposition.  Counsel moved for sanctions and a default judgment, alleging that father had willfully failed to comply with his discovery obligations by his blanket invocation of his Fifth Amendment privilege against self-incrimination.

2

¶ 5    At the July 2023 hearing, father said he did not intend to invoke his Fifth Amendment right during the hearing and that he would testify in support of his motion to modify maintenance and child support. Mother's counsel responded that mother was at a disadvantage because, without father's deposition testimony, mother had no way to verify or contradict father's testimony at the hearing.

¶ 6    The magistrate concluded that father's blanket invocation of his Fifth Amendment privilege was not appropriate, and that father had improperly asserted the privilege to "gain an advantage over" mother. The court therefore granted mother's motion for a default judgment and dismissed father's motion to modify maintenance and child support under C.R.C.P. 37(b)(2)(C).

¶ 7    Father petitioned for district court review of the magistrate's order. The court denied father's petition and adopted the magistrate's order.

## II.    Father's Fifth Amendment Invocation

¶ 8    Father asserts that the magistrate punished him for "properly" invoking his Fifth Amendment privilege during the deposition. We disagree that father properly invoked his Fifth Amendment privilege.

3

A.    Standard of Review and Legal Principles

¶ 9    Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review.  *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22.  We must accept the magistrate's factual findings unless they are clearly erroneous, meaning they have no support in the record.  *Id.*  But we review questions of law de novo.  *Id.*

¶ 10   The Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, guarantees that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V; *see People v. Ruch*, 2016 CO 35, ¶ 20.  Thus, the Fifth Amendment provides a witness with the privilege of declining to answer any question that would directly or indirectly incriminate him.  *See People v. Smith*, 275 P.3d 715, 720 (Colo. App. 2011).

¶ 11   This privilege "has long been applied in the civil context," *Steiner v. Minn. Life Ins. Co.*, 85 P.3d 135, 139 (Colo. 2004), and gives a person charged with indirect punitive contempt the same Fifth Amendment privilege afforded to a defendant in a criminal proceeding, including the right not to take the witness stand, *In re*

4

*Marriage of Alverson*, 981 P.2d 1123, 1125 (Colo. App. 1999). If the privilege is *properly invoked* in a civil action, a court must engage in a three-part balancing test to determine if any adverse consequences will flow from the invocation. *Steiner*, 85 P.3d at 141.

¶ 12    This means that, "[a]s a threshold matter," the district court must determine whether the privilege has been properly invoked in response to specific questions. *Id.* at 141 n.5. Because the invocation of the privilege "is an option of refusal, not a prohibition of inquiry," a witness cannot assert a blanket privilege under the Fifth Amendment "in advance of the questions actually propounded." *Ruch*, ¶ 23 (citation omitted).

### B. Father Did Not Properly Invoke His Fifth Amendment Privilege

¶ 13    While a witness may properly invoke the Fifth Amendment in response to questions that might directly or indirectly incriminate him, *Smith*, 275 P.3d at 720, father first invoked the Fifth Amendment in response to a deposition question simply asking him to identify his motion to modify. We do not see — and father does not explain — how responding to that question might have

5

incriminated him or exposed him to criminal punitive contempt sanctions.

¶ 14    After father invoked the privilege in response to that specific deposition question, he then confirmed that he would assert the privilege the "entire time," even though he did not know any of the questions that mother's counsel intended to ask, let alone whether any of them sought incriminating information.  As the magistrate recognized, this blanket assertion was not a proper invocation of the Fifth Amendment privilege.  *See Steiner*, 85 P.3d at 141 n.5; *Ruch*, ¶ 23.

¶ 15    Because it is contrary to the record, we reject father's claim that he only intended to invoke the privilege for "any items which dealt with the punitive contempt."  Not only is that claim refuted by father's blanket assertion of the privilege at his deposition, but father again acknowledged in his response to mother's motion for sanctions that "[t]here were no substantive questions" that mother's counsel could ask "that would not cause [him] to invoke his Fifth Amendment [r]ight."

¶ 16    For the same reason, we reject father's claim that the balancing test outlined in *Steiner* supports his position that the

6

magistrate's sanction was improper. Because father did not properly invoke his Fifth Amendment privilege "[a]s a threshold matter," the magistrate was not required to conduct the balancing test. *Steiner*, 85 P.3d at 141 n.5.

¶ 17 We therefore agree with the magistrate that father's blanket invocation of his Fifth Amendment privilege during his deposition was improper.

## III. The Discovery Sanction

¶ 18 Father next asserts that the magistrate abused her discretion by dismissing his motion to modify as a discovery sanction under Rule 37. We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 19 Trial courts have broad, though not unlimited, discretion to sanction parties who fail to provide or permit discovery. *Pinkstaff v. Black & Decker (U.S.) Inc.*, 211 P.3d 698, 702-03 (Colo. 2009); C.R.C.P. 37(b). If the court determines a discovery violation has occurred, it may impose a variety of sanctions, including entry of a default judgment. C.R.C.P. 37(b)(2)(C).

¶ 20 Sanctions should be proportional to the disobedient party's culpability, and the court should "impose the least severe sanction

7

that will ensure there is full compliance with a court's discovery orders and is commensurate with the prejudice caused to the opposing party." *Pinkstaff*, 211 P.3d at 702. A court may impose the "ultimate penalty" of a default judgment where the party has (1) "willfully or deliberately disobeyed a discovery rule"; (2) "engaged in bad faith conduct that is a flagrant disregard or dereliction of discovery obligations"; or (3) "engaged in culpable conduct" consisting of "gross negligence." *Pfantz v. Kmart Corp.*, 85 P.3d 564, 568 (Colo. App. 2003).

¶ 21 We review the imposition of discovery sanctions for an abuse of discretion and will overturn such a ruling only if it "is manifestly arbitrary, unreasonable, or unfair." *Pinkstaff*, 211 P.3d at 702.

¶ 22 As before, we accept the magistrate's factual findings unless they are clearly erroneous, meaning they have no support in the record. *Sheehan*, ¶ 22.

B. The Sanction Was Within the Magistrate's Discretion

¶ 23 In granting mother's motion to dismiss father's motion and entering a default judgment against him, the magistrate found that father's actions were willful and in bad faith. The magistrate expressed concern that father's invocation of his Fifth Amendment

privilege during the deposition was "dishonest" and done "in an attempt to gain an advantage over [mother]" because, despite invoking his Fifth Amendment privilege during the deposition, father intended to testify about his financial circumstances at the hearing.

¶ 24 Father doesn't specifically contest the magistrate's bad faith and willfulness findings. Instead, he relies on his claim that the magistrate sanctioned him for properly invoking his Fifth Amendment privilege. But as already explained, he did not properly invoke the privilege.

¶ 25 The record also supports the magistrate's finding that father willfully invoked the privilege in bad faith. That is, he did not invoke the privilege because he feared incrimination, but because he wanted to gain a tactical advantage by not giving mother's counsel "ammunition" to use against him. And because he refused to answer *any* questions at his deposition, mother had no way to evaluate or challenge father's testimony at the July 2023 hearing.

¶ 26 We do agree with father, however, that the magistrate seemed to fault him for not providing advance notice of his intention to invoke his Fifth Amendment privilege. Because a party is not

required to give advance notice before invoking the Fifth Amendment, *see generally People v. Austin*, 412 P.2d 425, 427 (Colo. 1966) ("The proper procedure is to wait until a question which tends to be incriminating has been asked and then decline to answer."), the magistrate should not have included that consideration in addressing mother's request for sanctions. But the magistrate had other independent grounds — supported by the record — for sanctioning father (namely, his bad faith in invoking the privilege to gain a tactical advantage over mother).

¶ 27    While we recognize, and the magistrate acknowledged, that the dismissal sanction was severe, we cannot conclude that the magistrate abused her discretion. The magistrate considered the facts and properly applied Rule 37. Because the record supports the magistrate's findings, we must affirm them.

## IV.    Remaining Contentions

¶ 28    Finally, we address father's claims that he was denied due process and that the district court erred by substituting its own factual findings for those of the magistrate.

¶ 29    As we understand it, father contends that he was denied due process because the magistrate (1) delayed resolving his motion to

modify and (2) declined to bifurcate the proceeding to hear his motion to modify before considering the punitive contempt motion. But due process requires adequate notice and an opportunity to be heard, *Am. Heritage Rys., Inc. v. Colo. Pub. Utils. Comm'n*, 2025 CO 27, ¶ 48, and father does not claim he was denied either. Nor does he otherwise develop his due process claims or provide supporting legal authority. We therefore do not consider them further. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 44 (declining to consider undeveloped and conclusory contentions of error made without supporting argument or authority), *aff'd*, 2021 CO 56.

¶ 30    But we agree with father that the district court improperly substituted its own factual findings for the magistrate's. *See* C.R.M. 7(a)(9); *see also Sheehan*, ¶ 22 ("A district court reviewing a magistrate's decision under C.R.M. 7(a) may not alter the magistrate's factual findings unless they are clearly erroneous."). And it is unclear whether the record supports the substituted findings. Even so, because the record supports the magistrate's findings and they were sufficient under Rule 37 to support the

dismissal of father's motion, we need not address the district court's findings.

## V.    Disposition

¶ 31    The order is affirmed.

JUDGE LIPINSKY and JUDGE KUHN concur.